Mulligan, J.
Plaintiff, Nation One Mortgage Company, Inc., brought this action against defendants Peter Barnett (“Barnett”), Donald J. Voss (“Voss”), Franklin D. Reed (“Reed”), Deborah D. Rehm (“Rehm”), and Steven Frost (“Frost”) seeking damages for fraud/intentional misrepresentation, conspiracy, negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of G.L.c. 93A arising out of loan applications submitted to plaintiff that included inaccurate appraisals overvaluing properties that secured the loans. Defendants Voss, Reed, Rehm, and Frost move to dismiss the complaint under Mass.R.Civ.P. 12(b)(2) on the grounds that this Court lacks personal jurisdiction or, in the alternative, that dismissal is warranted for Jorum non conveniens. For the reasons which follow, defendants’ motions are DENIED.
BACKGROUND
In this case, plaintiff alleges that Rehm and Frost entered into a scheme with their codefendants, Reed, Voss, and Barnett, to defraud plaintiff by misrepresenting the value of two properties in St. Louis, Missouri. By means of such misrepresentations, plaintiff alleges that the defendants induced plaintiff to provide mortgage loans secured by those appraised properties far in excess of the actual market value of such properties.
The facts as they relate to jurisdiction may be briefly stated.
Plaintiff is a Massachusetts corporation with its principal place ofbusiness in Braintree. Voss, doing business as Voss Appraisal Services, operates as a real estate appraiser in St. Louis, with a principal place ofbusiness in Bridgeton, Missouri. Voss is licensed to perform appraisals in Missouri and Illinois. Reed, also a licensed real estate appraiser, was, at all relevant times, employed by Voss as an appraiser in the Bridgeton, Missouri office. Reed is licensed to perform appraisals in Missouri.
*103 Rehm is a licensed mortgage broker doing business as A-l Home Loans, with a principal place of business in Bridgeton, Missouri. Frost is an employee of A-l Home Loans, working out of the Bridgeton. Missouri office. At relevant times, Voss, Reed, Rehm, Frost, and Barnett shared office space in Bridgeton, Missouri.
On or about August 13, 1998, Rehm entered into a Mortgage Broker Agreement with plaintiff, whereby Rehm agreed to originate mortgage loans and forward loan applications to plaintiff. Between August 1998 and October 1999, Rehm and/or Frost submitted fifty-two mortgage loan applications to plaintiff, sixteen of which were funded by plaintiff. Rehm and/or Frost made numerous telephone calls and transmitted numerous loan documents and other correspondence to plaintiff in Massachusetts. As a result, Rehm and/or Frost received $21,474 in premiums as consideration for the loans originated with plaintiff.
Plaintiff alleges that Reed and Voss sought and obtained the approval of plaintiff to furnish real estate appraisals to plaintiff in Massachusetts in connection with plaintiffs funding of residential mortgage loans. Reed and/or Voss faxed to plaintiff copies of Reed’s real estate appraiser’s licenses, the declarations page from Reed’s professional liability insurance, and the declarations page from Voss’ professional liability insurance in order to qualify to prepare appraisals for plaintiff. Over a four-month period, Reed and/or Voss furnished plaintiff with six appraisals.
Two of the loan applications submitted by Rehm and/or Frost included a loan application of Barnett. Plaintiff alleges that Reed and/or Voss performed real estate appraisals on two Missouri properties that would secure the two mortgage loans, and that Rehm and/or Frost then furnished the appraisals to plaintiff in Massachusetts. Plaintiff maintains that the appraisals Rehm, Frost, Voss and Reed submitted to it intentionally misrepresented the value of the two properties in order to induce plaintiff to grant Barnett the requested mortgage loans. Because of the gross undervaluing of the two subject properties, plaintiff contends that it has been unsuccessful in selling the two mortgage loans on the secondary market and plaintiff has been forced to institute foreclosure actions against Barnett on both properties.
DISCUSSION
Lack of Personal Jurisdiction
A claimant confronting a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction “has the burden of establishing the facts upon which the question of personal jurisdiction over the defendant is to be determined.” Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). Although the defendant does not have the burden of production or persuasion, a court can consider a defendant’s supporting affidavits which cite grounds for dismissal under Mass.R.Civ.P. 12(b)(2) in determining the jurisdiction question. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 292 (1985).
Resolution of personal jurisdiction over nonresidents requires the court to engage a two-tier analysis. First, the court must be afforded jurisdiction by its long-arm statute. G.L.c. 223A, §§3(a)-(h). Second, the court’s exercise of jurisdiction must be consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1996). Addressing both aspects of the jurisdiction assessment, this court concludes that its assumption of jurisdiction is sound.
Massachusetts Long-Arm Statute
The Massachusetts Long-Arm Statute allows a court to exercise personal jurisdiction over a corporation that transacts business or engages in tortious conduct in the Commonwealth. G.L.c. 223A, §3(a), (c), (d). Voss and Reed contend that they never transacted business in Massachusetts or purposefully availed themselves of the benefits and protections afforded by Massachusetts. Further, Voss argues that he did not perform the appraisals in question, and that such appraisals were unauthorized.[2] Rehm and Frost argue that plaintiff solicited them to submit mortgage applications to plaintiff for the purpose of providing loans, that none of the loan applications submitted to plaintiff were for Massachusetts properties, that the subject properties in question are located in Missouri, and that the location of all of the closing and other relevant activities occurred in Missouri.
Plaintiff, on the other hand, contends that as a result of its ongoing contractual relationship with Rehm and Frost, Rehm and Frost have demonstrated an ongoing and regular pattern of contacts with the forum state and have derived substantial benefits from such contacts. Plaintiff maintains that Voss and Reed are subject to personal jurisdiction because of their continuous and ongoing contact with Massachusetts in seeking to do business with plaintiff and causing appraisals to be submitted to plaintiff. Furthermore, plaintiff argues that Rehm, Frost, Voss, and Reed are liable for tortious conduct in Massachusetts as a consequence of their intentional and fraudulent misrepresentations of the value of the two subject properties.
The Rule 12(b)(2) materials offered are persuasive that Rehm, Frost, Voss, and Reed maintained an ongoing and regular pattern of contacts with plaintiff in Massachusetts and that each derived substantial benefits from such contacts. Therefore, this complaint is properly within the reach of G.L.c. 223A, §3. The issue then is whether defendants’ contacts with Massachusetts are sufficient to satisfy constitutional Due Process standards.
Constitutional Due Process 1. Minimum Contacts
Rehm, Frost, Voss, and Reed contend that they lack the requisite minimum contacts with Massachusetts *104 to justify the imposition of Massachusetts jurisdiction. The evidence before the court demonstrates that Rehm, Frost, Voss, and Reed conducted an ongoing and regular pattern of contacts in Massachusetts and have derived substantial benefits from such contacts. Specifically, Rehm entered into a Mortgage Broker Agreement with plaintiff, whereby Rehm agreed to originate mortgage loans and offer loan applications to plaintiff. As a result of that agreement, Rehm and/or Frost submitted fifty-two mortgage loan applications to plaintiff, sixteen of which were funded by plaintiff. Rehm and / or Frost made numerous telephone calls and transmitted numerous loan documents and other correspondence to plaintiff in Massachusetts. As a result, Rehm and/or Frost received $21,474 in premiums as consideration for the loans originated with plaintiff.
Reed and Voss sought and obtained the approval of plaintiff so that they could furnish real estate appraisals to plaintiff in Massachusetts in connection with plaintiffs funding of residential mortgage loans and, to that end, submitted the necessary documentation directly to plaintiff. Over a four-month period, Reed and/or Voss furnished plaintiff with six appraisals.
By reason of their engaging in business and other conduct in Massachusetts, Rehm, Frost, Voss, and Reed had the requisite minimum contacts and are therefore subject to Massachusetts jurisdiction.
2. Fairness
The court’s inquiry into whether subjecting defendants to personal jurisdiction in this Commonwealth comports with the standards of fairness is whether the “suit offend(s) ‘traditional notions of fair play and substantial justice.’ ” International Shoe. Co. v. Washington, 326 U.S. 310, 316 (1940).
By entering into arrangements to conduct business with plaintiff in Massachusetts, Rehm, Frost, Voss, and Reed purposefully availed themselves of the privileges of operating and doing business in the Commonwealth. Defendants’ conduct and their connections to this forum are sufficient to support the conclusion that defendants could reasonably foresee their being drawn into court in Massachusetts. See American International Rent-A-Car v. Cross, 709 F.Sup. 272, 275 (D. Mass. 1989). This court therefore holds that “notions of fair play and substantial justice” will not be offended should plaintiff be permitted to maintain its action in Massachusetts. Id. Personal jurisdiction has been properly asserted under G.L.c. 223A, §3 and comports with constitutional due-process requirements. Accordingly, defendants’ motions to dismiss for lack of personal jurisdiction must be denied.

Forum Non Conveniens

Rehm and Frost additionally argue that the claims brought by plaintiffs should be dismissed under the doctrine of Jorum non conveniens. G.L.c. 223A, §5 states: “When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.”
A decision of whether to dismiss an action under the doctrine of forum non conveniens cannot be made by applying a universal formula and depends greatly on the specific facts of the case. W.R. Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass. 572, 577 (1990).
Dismissal on the ground of forum non conveniens is justified “where it appears that complete justice cannot be done here, that the defendant will be subjected to great and unnecessary inconvenience and expense, and that the trial will be attended, if conducted here, with many if not insuperable difficulties which all would be • avoided without special hardship to the plaintiff if the proceedings are brought in the jurisdiction where the defendant is domiciled, where service can be had, where the cause of action arose and where justice can be done.” New Amsterdam Casualty Co. v. Estes, 353 Mass. 90, 94 (1967). “Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive . . . But unless the balance is strongly in favor of the defendant, the plaintiff s choice of forum should rarefy be disturbed.” Id. at 95. Further, a decision to dismiss an action on the grounds offorum non conveniens should not be made unless all the parties most probably can be made parties in another, more convenient forum. Id. at 579. Piecemeal resolution of common factual questions is inappropriate, and dispersed decision making wastes the time and resources of parties and the courts and permits inconsistent results. W.R. Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass, at 579.
Rehm and Frost argue that the claims should be dismissed because each of the defendants are residents of Missouri, the two subject properties in question are located in Missouri, any and all documents executed in connection with the mortgage loan obtained by Barnett were executed in Missouri, and that all necessary witnesses for discovery and trial are located in Missouri.
Where, as here, an action is based upon a claim of fraud, the action is “transitory” or “in personam” and relates to the individual committing the fraud, not the real property. Amerda Hess Corp. v. Mitchell Garabedian, 416 Mass. 149, 151 (1993); First Federal Savings & Loan Assoc. v. Merrimack Valley National Bank, 5 Mass.App.Ct. 320, 322-23 (1977). Thus, while this action relates to two mortgages secured by real property located in Missouri, the basis of the action is the fraud committed by defendants in misrepresenting the value of those properties to plaintiff and, therefore, constitutes a transitory action that may be brought in this forum.
Furthermore, a plaintiff may choose the forum so long as it comports with the law. Defendants deliberately chose to do business with a Massachusetts corporation. See Carlson Corp. v. University of Ver *105 mont, 380 Mass. 102, 109 (1980). Defendants chose to do business with a Massachusetts resident, presumably because it was to their advantage. Defendants engaged in transactions with plaintiff with the full knowledge that they were transacting business with a Massachusetts corporation, and thus might be subject to the jurisdiction of Massachusetts courts in connection with those transactions. Therefore, I find and rule that it is not unfair or unreasonable to compel defendants to defend this action in Massachusetts. Id.

ORDER

For the reasons stated herein, defendants’ motions to dismiss are DENIED.

Voss's Affidavit indicates that as a result of the rendering of such unauthorized appraisals, he filed a complaint with the City of Bridgeton, Missouri Police Department.